UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JENNIFER McPHAIL, | § | |
| Plaintiff, | § | |
| v. | § | A-14-CV-573 -LY |
| | § | |
| THE CITY OF AUSTIN, | § | |
| Defendant. | § | |

## COMPLAINT

Plaintiff Jennifer McPhail respectfully brings this action against Defendant City of Austin and alleges it maintains architectural barriers, fails to remove them, refuses her reasonable requests for modification and accommodation, utilizes methods of administration that substantially impair its programs for Ms. McPhail, and denies her the equal benefits of its parks, trails, and pools, in violation of the ADA and Rehabilitation Act, including the following:

### STATEMENT OF CLAIMS

1.   Defendant refused to eliminate architectural barriers, make reasonable accommodations, or provide accessible routes and ramps throughout the trail system, equal access to pools, and adequate signage to alert individuals to the accessible paths and entrances in the City's parks, and thus violated 29 U.S.C. §794 (Rehabilitation Act) and Title II of the Americans with Disabilities Act, 42 U.S.C. §§12131, *et seq.* (ADA). Ms. McPhail seeks prospective injunctive and declaratory relief in order to compel the city to comply with these laws and modify their policies to eliminate illegal barriers that prevent her and others with mobility disabilities from accessing pools, parks, trails, and other public areas in the City.

JURISDICTION AND VENUE

2. This action is brought pursuant to the ADA and Rehabilitation Act. Jurisdiction and venue are proper in this court because the events or omissions complained of occurred in Travis County, where the City of Austin and its parks, pools, and trails are located.

PARTIES

3. Plaintiff Jennifer McPhail is a resident of Austin, Texas. She uses a wheelchair for mobility purposes and is a qualified person with a disability within the meaning of the ADA. Ms. McPhail also has a handicap within the meaning of the Rehabilitation Act.

4. Defendant City of Austin receives federal financial assistance and is a municipal corporation and public entity within the State of Texas. It is responsible for providing and maintaining city facilities, programs, and services, including the parks, trails, rides, and pools of Austin, Texas, and for ensuring that they are accessible to persons with disabilities.

STATEMENT OF FACTS

5. Ms. McPhail is an avid photographer who regularly navigates the Austin trails, parks, and pools while enjoying nature and utilizing Defendant's public transportation system. All of these services are open to the public.

6. Ms. McPhail was born with cerebral palsy and is totally dependent on a wheelchair for mobility. Because Ms. McPhail routinely uses the parks, trails, and pools in her day-to-day life, regular access to the City's services is important so she does not get trapped outside and so she can utilize the Defendant's services.

7. Defendant's recent renovations of the trails and parks were an opportunity for it to make its public facilities accessible to Ms. McPhail and others similarly situated. In November 2006, Austin voters approved an $84.7 million dollar bond for new construction, renovations, and

improvements for the Defendant's parks, recreation centers, and other facilities. Improving and achieving accessibility was made a centerpiece of the bond, and many of the parks, pools, and trails that Ms. McPhail cannot access re-opened in May of 2012.

8. Ms. McPhail has made requests that Defendant accommodate her disability so that she can access their facilities. She has made these reasonable requests for accommodation directly to the City's council members and the city manager. Defendant's refusal to bring its parks, trails, rides, and pools in accordance with disability law and accommodate these requests have directly resulted in barriers to accessing the park for Ms. McPhail and all persons with disabilities.

*Johnson Creek Trailhead*

9. Defendant recently renovated the Johnson Creek Trailhead path, which runs under the MoPac highway, and two new access points to Lady Bird Lake for recreational purposes. They did further construction on the path during the summer of 2012.

10. Ms. McPhail and others who use a wheelchair for mobility cannot reach either of these access points. Both access points are only accessible using stairs.

*The Trail at Lady Bird Lake*

11. The Trail at Lady Bird Lake (also known as Town Lake Trail) that runs along each side of the river is one of the signature pieces of the Austin trail system. Defendant has refused to maintain it and allowed the trail to fall into disrepair, making it inaccessible to residents who use wheelchairs for mobility.

12. The ramp on the northwest side of the South 1st Street bridge is inaccessible to people in wheelchairs. Defendant has neglected the transition between the ramp and the trail and allowed it to fall into disrepair so as to create a step that Ms. McPhail cannot cross.

13. Previously, Ms. McPhail used the ramp to take pictures and enjoy the trail. However, when she attempted to take a pleasant stroll in 2012, Defendant's barrier prevented her from getting

back on the ramp to exit the trail. Ms. McPhail was stuck on the trail for forty-five minutes while attempting to find an alternate exit. She was unable to find an alternate exit and was forced to return to the inaccessible exit and wait for someone to push her chair back on the ramp. Defendant's barrier not only not only subjected her to the danger of falling, but delayed her day and eliminated her independence. Defendant's barrier continues to prevent Ms. McPhail from fully accessing the trail.

14. On the northeast side of the South 1st Street bridge, between South 1st Street and Congress Avenue, Defendant was engaged in construction. To passersby, however, there appeared to be an accessible ramp down to the trail. Later in the summer of 2012, Ms. McPhail attempted to access the trail using the ramp, but it actually leads to a dead-end and there is no sign to indicate that Defendant erected a ramp to nowhere. Obviously Ms. McPhail is not the only person Defendant has delayed with this barrier; there was a handwritten sign posted that ominously stated, "Wheelchairs Beware."

15. Defendant caused access to the trail to be unequal: in June 2012, there were access points to the trail on each side of the Congress Avenue bridge, but only using steps. The steps remain the only option to descend to the trail on the east side of the Congress Avenue bridge. This means that Defendant unnecessarily forces Ms. McPhail and others similarly situated to travel many blocks to get on and off the trail.

16. Defendant has also made the section of the trail running under the Congress Avenue bridge inaccessible from behind the Radisson hotel up to the South 1st Street bridge. While there are two sets of stairs as access points, Defendant has refused to offer any ramps.

17. Under the South 1st Street bridge, on the south side, there was a metal bridge across the sidewalk that was sagging dangerously and was functionally impassable.

18. Later, when Ms. McPhail tried to enjoy a trip on the Lone Star Riverboat, she was unable to access it from Defendant's trail by herself. It was far too steep and did not have stable terrain that allowed her wheelchair to traverse it properly and safely.

19. Ms. McPhail also took the trail to go to the Zilker Train Depot. However, Defendant's pathway leading up to it is uneven and unsafe for her and her wheelchair and had a curb that dropped off. It did not allow her to get to the ticket counter. Even if Defendant's barrier did not prevent her access to buy tickets, she would have found that the train is inaccessible to people who use wheelchairs.

20. Defendant has not posted any permanent signs in compliance with the law which indicate where the accessible entrances to the trail are, nor where the accessible exits are from the trail up to the sidewalks. Several of the temporary signs that Defendant has posted actually misdirect Ms. McPhail and wheelchair users to exits that are not, in fact, accessible.

   *Deep Eddy Pool and Park*

21. Defendant recently renovated Deep Eddy Pool, and the associated park, using money from the 2006 bond, continuing construction through March 2012, and re-opening in May 2012. However, Defendant prevents access for Ms. McPhail and others similarly situated to many features of the pool and park in violation of the law.

22. Defendant made the picnic tables on the northwest side of the pool inaccessible – although the tables themselves have portions that are suitable for wheelchair access, there was no pathway to the tables. As such, the tables are inaccessible because there is a step between the grass and the concrete on which the tables are located. The grill that is provided for patrons' use was similarly inaccessible wheelchair users because the transition point from grass to concrete creates an insurmountable step or curb for Ms. McPhail and others similarly situated.

23. Ms. McPhail could not access the playscape at the park, nor could children in wheelchairs.

24. Ms. McPhail and others similarly situated do not have sufficient room to maneuver within the seating area outside the concessions stand. Furthermore, even if Ms. McPhail had sufficient room to maneuver, she cannot actually access the tables, because the spaces at the tables have bars on the ground that would block a wheelchair and because the tables are arranged so that people with wheelchairs could not sit at open parts of the tables. Ms. McPhail and her friend, who also uses a wheelchair, could not even reach the tables.

25. Ms. McPhail visited the pool twice in June 2012, and on both visits, Defendant had neglected to repair a chair lift into the deep end of the pool and it did not work. Ms. McPhail requested that Defendant fix the lift and make accommodations for her disability so that she could access the pool. Defendant's employees refused, saying they did not know when it would be fixed or what was wrong with the equipment.

26. Defendant chained shut the accessible entrance from the concessions and sitting area that leads to the accessible ramp down to the pool on both of Ms. McPhail's visits in 2012. In order to access the ramp, Defendant forces Ms. McPhail to navigate back through the bathhouse, against the flow of traffic.

27. Though Defendant provides no accessible shower in the bathhouse, it has improperly labeled one as such. While it is spacious and has a bench, is not actually usable by Ms. McPhail. The shower bench, which she must use to shower, was located so far away from the showerhead – much farther than 27 inches – that the water did not reach the bench or anyone sitting on it while the shower hose was too short and did not contain a detachable hose. More recently, the seat installed by Defendant is not mounted to the wall and is still useless to Ms. McPhail. When Ms. McPhail attempted to use the soap dispenser, it was more than 48 inches off the ground, so she

could not reach it. Nor could she even turn on the light, as Defendant placed the light switch too high – 51 inches from the ground.

28. Even the bathroom in the same facility is inaccessible because Defendant maintains barriers preventing a person in a wheelchair from properly using it. There is now a useless empty rack in front of the soap dispenser and pipes which carry hot water under the sink in the bathroom are exposed and not insulated or otherwise configured to protect against contact.

29. Ms. McPhail could not reach the soap dispenser while in front of the sink, and could barely reach it even after maneuvering her chair at different angles.

30. Defendant does not provide adequate signage, particularly signs indicating that the accessible entrance to the pool is the ramp located on the west side of the pool, not through the bathhouse.

31. All of the elements above have been constructed, renovated, altered, or modified after March 15, 2012, and it would not be structurally impracticable to make them accessible to wheelchair users. The removal of all the barriers is simple and feasible.

32. Defendant maintains architectural barriers, fails to remove them, refuses her reasonable requests for modification and accommodation, and utilizes methods of administration that substantially impair its programs for Ms. McPhail. Defendant's continuing violations and refusal to comply with the law have cause her to incur costs in travel, missed opportunities, and loss of time, money, and enjoyment, while suffering mental anguish in the process.

33. If she did not require the use of a wheelchair, she would be able to fully access all of the areas of Defendant's parks described above. The sole reason Ms. McPhail is denied the equal benefits of Defendant's parks, trails, and pools and is excluded from full participation in the areas of the city provided by its parks and recreation department is that Defendant refuses to allow her these benefits and participation.

CAUSES OF ACTION

34. Ms. McPhail has a disability that requires her to use a wheelchair and substantially limits or interferes with major life activities, including her ability to move about freely and access many types of structures. Accordingly, she is protected by the Rehabilitation Act and ADA. 29 U.S.C. §705(20)(B) and 42 U.S.C. §12131(2). Likewise, she is eligible for services under both laws. 28 C.F.R. §41.32(b) and 42 U.S.C. §12131(2).

35. Defendant is a recipient of federal financial assistance and is thus subject to the Rehabilitation Act. Likewise, the city of Austin is a "local government" and, as such, is a "public entity" under the ADA. 42 U.S.C §12131(1)(A). Its parks and recreation department is a "department […] of local government" and, as such, is a "public entity" under the ADA. *Id.* §12131(1)(B).

36. The Rehabilitation Act, to which the courts refer in construing the ADA, defines "program or activity" to include all of the operations of a department, agency, or other instrumentality of a state or local government. 29 U.S.C. § 794(b). The City of Austin's programs and activities include its operations related to running and maintaining its parks and pool. Thus, the Rehabilitation Act and the ADA apply to Defendant in this case.

37. Title II of the ADA requires public entities to operate "each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. §35.150. It must also maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. §35.

38. Defendant must make it possible for individuals with mobility disabilities to use wheelchairs and other mobility aids in all areas open to pedestrian use. 28 C.F.R. §35.137.

39. No qualified individual with a disability shall, because a public entity's facilities are inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of the services, programs, or activities of a public entity. 28 C.F.R. § 35.149.

40. The Americans with Disabilities Act Accessibility Guidelines (ADAAG) – also known as the ADA Standards for Accessibility and Design – establish standards to which public entities must conform in order to comply with the ADA and the Rehabilitation Act. 42 U.S.C. § 12134. The 2010 ADAAG apply to public facilities constructed or substantially renovated, modified, or altered on or after March 15, 2012. 28 C.F.R. §35.151(c). Defendant has substantially constructed, altered, renovated, or modified the trails, pools, and parks at issue since then, thus bringing them under the 2010 ADAAG. Even if the above public facilities were altered less recently, they are still subject to the requirements of 1991 ADAAG, which are the same for the barriers identified in this case, and, to the maximum extent feasible, must be altered in such manner that the facility is readily accessible to and usable by individuals with disabilities like Ms. McPhail. 28 C.F.R. §35.151.

41. The public facilities described above, including trails, pools, parks, routes, rides, and features, violate the following ADAAG provisions:

a. Section 216 of the 2010 ADAAG require that, where not all entrances are accessible, entrances that are accessible shall be identified by the International Symbol of Accessibility, and directional signs indicating the location of the nearest accessible entrance shall be provided at entrances that are not accessible. *See also* 28 C.F.R. § 35.163. This same mandate is present in 1991 ADAAG §4.1.2(7)(c). Ms. McPhail has made several trips to the Trail at Lady Bird Lake over the course of more than a year since the summer of 2012. Not

once has Defendant provided sufficient, adequate signage. There are several blocks and miles of trails with numerous entrances and exits which lack any helpful signage. Plaintiff visited the trail twice in June 2012 and on each trip there was no signage at all. On one of her visits, Ms. McPhail encountered a ramp that appeared to be an access point to the trail and was surprised to find that it was not accessible and that it lacked a sign indicating that it was a dead-end. While Defendant finally placed some temporary signage along the trail by April 2013, these signs actually misdirect persons with disabilities to the inaccessible ramp at the northwest corner of the South First Street bridge. Moreover, the temporary signs were present for more than 7 days, which means that, though temporary, they must comply with the law. 2010 ADAAG §216.1.3; 1991 ADAAG §4.1.3(16). There are also at least two inaccessible exits along the north side of the trail that lack appropriate signage indicating the direction of the nearest accessible exit; these are the exits at the inaccessible bridge at the northwest corner of the South First Street bridge and the detour ramp just west of there. Defendant has failed provided designated signs for accessible ramps to or from the trails, nor are there directional signs near the stairs to the nearest accessible ramp. Furthermore, a ramp that appeared to be an access point to the trail lacked a sign indicating it is a dead-end. Deep Eddy Pool does not have a sign for the accessible ramp to or from the pool, nor has Defendant provided directional signs indicating the route to the ramp from the ticket and bathhouse area.

b. Sections 402 and 403 in 2010 ADAAG as well as 1991 ADAAG §4.3.7 require that accessible routes and walking surfaces be no steeper than 1:20. The violations complained of above have slopes that are much steeper than even 1:8, and are thus inaccessible. This is

particularly true of the trail in places identified above, such as the path to the Lone Star Riverboat.

c. Similarly, Section 405 in 2010 ADAAG mandates that ramps cannot have a slope steeper than 1:12. This mandate was part of the 1991 ADAAG, as well. Under Section 303 of 2010 ADAAG, changes in level greater than 1/2 inch high shall be ramped, and shall comply with Section 405. Ms. McPhail cannot use the ramp on the northwest side of the South First Street bridge because Defendant has effectively created a curb or a step at the end of the ramps. The ramp to the west of this ramp is also inaccessible to Ms. McPhail because its slope is simply too steep. Defendant also maintained a portion of the sidewalk with a metal bridge across it that was dangerous to cross in a wheelchair.

d. Section 206 of 2010 ADAAG requires that "at least one accessible route shall be provided within the site from accessible parking spaces and accessible passenger loading zones; public streets and sidewalks; and public transportation stops to the accessible building or facility entrance they serve." This is also required by 1991 ADAAG §4.1.2. Defendant fails to provide accessible points of entry to the trails. On Ms. McPhail's visit to the trail in summer 2012, she was unable to find an accessible exit to the trail on the north side of the Colorado River and was forced to rely on a passerby to push her up the inaccessible ramp on the northwest corner of the South First Street Bridge. While Defendant has since added an accessible ramp at the northwest corner of the Congress Avenue Bridge, there are no other accessible entrances to the trail within several blocks of this ramp. Defendant fails to provide accessible points of entry to the trails and instead have caused curbs to develop at the ends of ramps.

11

e. Section 206.3 of 2010 ADAAG further provides that: "Accessible routes shall coincide with or be located in the same area as general circulation paths. Where circulation paths are interior, required accessible routes shall also be interior." This provision can also be found in 1991 ADAAG §10.3.1(1). The trails do not have equal points of access along the trail where there are staircases but no ramps. Deep Eddy Pool's accessible route did not coincide with the route for the general public because the accessible door between the bathhouse patio and the path to the ramp is chained shut. Furthermore, the park area by the pool did not have an accessible route to all elements of the park, including the park benches and the grill.

f. Section 206 of 2010 ADAAG discusses play areas and requires at least one accessible route shall be provided within the play area. The accessible route shall connect ground level play components required to comply with 2010 ADAAG Section 240.2.1 and elevated play components required to comply with 2010 ADAAG Section 240.2.2, including entry and exit points of the play components. This is mandated, as well, in 1991 ADAAG §§4.1.1(1); 3.5.30. There was no accessible route to Defendant's playscape.

g. Section 240 of 2010 ADAAG requires accessible ground and elevated play components, accessible routes, ramps and transfer systems (typically a platform or transfer steps), and accessible ground surfaces. The play structure in the park was inaccessible because there was no accessible route, nor was there a platform or transfer steps for people who use wheelchairs or other mobility aids.

h. Section 1002 of 2010 ADAAG requires accessible routes to serve amusement rides, wheelchair spaces in amusement rides, and seats designed for transfer. Defendant's train fails to meet any of these requirements.

i. Sections 902 of 2010 ADAAG and 4.32.2 of 1991 ADAAG also require dining surfaces like Defendant's tables near the concession stands at Deep Eddy Pool to be accessible and have clear floor space complying with Sections 305 and 306. 2010 ADAAG §305 and 1991 ADAAG §4.2.4 require that "one full unobstructed side of the clear floor or ground space for a wheelchair shall adjoin or overlap an accessible route or adjoin another wheelchair clear floor space" and that "the minimum clear floor or ground space required to accommodate a single, stationary wheelchair and occupant is 30 inches by 48 inches." The seating area by the concessions stand does not have sufficient room for Ms. McPhail to maneuver her wheelchair or eat at a table. The tables in the concessions area were also inaccessible because they all lack the sufficient clear floor space required by 2010 ADAAG § 902 and 1991 ADAAG § 4.32.2.

j. Furthermore, Defendant did not provide an accessible concessions stand at the time of Ms. McPhail's visits and still do not. Sections 904 of 2010 ADAAG and 7.2(2)(i) of 1991 ADAAG require accessible service counters at which goods are sold to be at most 36 inches high where a wheelchair user is visible and reach is minimized. The service window in use at Deep Eddy is over 42 inches from the ground, which was too high to provide service to Ms. McPhail. There is another window that is the appropriate height, but Defendant blocks this window so that it is not in use or open. In order for the accessible window to be opened, Defendant would only have to shut the inaccessible window and move objects that prevent concession stand workers from approaching the window from the inside, but Defendant consistently refuses to take such a simple measure.

k. Where showers are provided, at least one must be accessible under ADAAG § 213.3.6. Defendant's showers at Deep Eddy did not and do not comply.

l.  Under Sections 607 and 608 of ADAAG, a shower spray unit should have 59 inch minimum hose that can be used both as a fixed-position shower head and as a hand-held shower. It must also provide a showerhead on the wall adjacent to the provided seat, and the seat must be no more than 27 inches from the showerhead. The shower spray unit in the accessible shower at Deep Eddy was fixed and not handheld, and provided none of the features above required when Ms. McPhail visited in June of 2012.

m.  Section 610 of ADAAG also requires that the seat in the shower stall must be a folding type, must be installed on the side wall adjacent to the controls, and it must extend from the back wall to a point within three inches of the compartment entry. Even now in the bathhouse, while the accessible shower contains a seat, it does not extend from the back wall – Defendant installed the seat too far from the shower spray to be functional, and the seat is not fixed and does not fold.

n.  Furthermore, Defendant has made it so that Ms. McPhail cannot access either the sink or the soap dispenser in the bathroom. In addition to being blocked by a useless rack, the soap dispenser was higher than 48 inches off the ground, in violation of 2010 ADAAG §308 and 1991 ADAAG §4.2.5. Defendant further violates the law because metal supply tubing carrying hot water on the underside of the sink is exposed, in violation of 2010 ADAAG §606.5 and 1991 ADAAG §4.19.4.

o.  Likewise, Defendant has located the light switch too high. Light switches must not be more than 48 inches from the ground. 2010 ADAAG §§ 308 and 309 and 1991 ADAAG §4.1.3.

42. Ms. McPhail preserves for complaint any other violation of the ADAAG requirements that further inspection would reveal.

43. By implementing improper alteration of its trail system and failing to comply with old and new construction and alteration guidelines, Defendant caused architectural barriers that prevent equal access to its parks, trails, and pools for Ms. McPhail.

44. In addition to their respective prohibitions of architectural barriers and disability-based discrimination, both the ADA and the Rehabilitation Act impose upon public entities an affirmative obligation to make reasonable accommodations for individuals with disabilities. Where a defendant fails to meet this affirmative obligation, the cause of that failure is irrelevant.

45. Ms. McPhail has made multiple reasonable requests to allow her and other people with disabilities access the areas of Defendant's park described above. Defendant, through its representatives, has denied all of these requests, even though they are not an undue burden, and thereby violated the ADA and Rehabilitation Act.

46. Separately, a public entity may not utilize methods of administration that have the purpose or effect of defeating or substantially impairing accomplishment of the public entity's program with respect to individuals with disabilities. 28 C.F.R. § 35.130(b)(3)(ii). Defendant's methods of administration of its park, pools, trails, and rides do exactly that, and they should be changed to fully open the parks to people with disabilities.

47. As a separate cause of action, Defendant is excluding Ms. McPhail from full participation in, and denying her the full benefits of, its parks and recreation department's programs and activities based on her disabilities while not allowing her to achieve the same benefits of those programs or activities as people without disabilities, in violation of the Rehabilitation Act and ADA. 28 C.F.R. §42.503, 42 U.S.C. §12132.

48. Public entities such as Defendant, in providing any aid, benefit, or service, may not, on the basis of disability, deny a qualified individual with a disability the opportunity to participate in or

benefit from the aid, benefit, or service; afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others; provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result or to gain the same benefit as that provided to others; or provide different or separate aids, benefits, or services to individuals with disabilities or to any class of individuals with disabilities than is provided to others unless such action is necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others. 28 C.F.R. § 35.130.

## RELIEF REQUESTED

49. Ms. McPhail seeks declaratory relief and prospective injunctive relief to require Defendant to comply with the ADA, ADAAG, and Rehabilitation Act; to accommodate Ms. McPhail's reasonable requests for accommodation; to stop utilizing methods of administration that substantially impair accomplishment of its parks program with respect to individuals with disabilities; to provide equal benefits and prevent exclusion from its programs and services; as well as nominal damages and attorneys' fees, as stated below.

### Declaratory Relief

50. Ms. McPhail is entitled to a declaratory judgment concerning each of Defendant's violations of the law, specifying the rights of persons with disabilities regarding Defendant's facilities and services available to the public in the City of Austin.

### Injunctive Relief

51. Because Ms. McPhail will continue to experience exclusion and unfair treatment as a result of Defendant's failure to comply with the federal and state disability law or reasonably modify its policies, injunctive relief is necessary to modify Defendant's trail entrances, routes, rides,

ramps, and signs, as well as Deep Eddy's accessible routes, seating, bathhouse features, and pool equipment.

Damages

52. The Rehabilitation Act provides for damages for Ms. McPhail related to the discrimination, barriers, and injuries caused by Defendant.

Attorneys' Fees and Costs

53. Ms. McPhail is entitled to all reasonable attorney's fees, expenses, and court costs pursuant to 42 U.S.C. §12205, 42 U.S.C. §12133, and 29 U.S.C. §794.

PRAYER FOR RELIEF

54. Ms. McPhail therefore respectfully requests that the Court:

A. Enter declaratory judgment that Defendant's architectural barriers and practices, policies, and procedures in the past have prevented, and continue to prevent, Ms. McPhail and similarly situated individuals from fully accessing Defendant's public facilities, in violation of federal law;

B. Issue a permanent injunction requiring Defendant, its agents, servants, and employees, and all persons acting in concert with him as a city official, to comply with the statutory provisions the ADA, ADAAG, and Rehabilitation Act, enforce and modify policies under these laws, eliminate all barriers described herein that prevent Ms. McPhail and others similarly situated from having access to goods, services, facilities, privileges, advantages, and accommodations of the property violating disability law at any time in the future in violation of the law;

C. Award Ms. McPhail damages sufficient to compensate her for the violations of her rights under the law and injuries suffered as result of Defendant's violation of the law;

D. Find that Ms. McPhail is the prevailing party in this action, and order Defendant to pay costs, and reasonable and necessary attorney's fees, as are equitable and just, pursuant to 42 U.S.C. §12205, 42 U.S.C. §12133, and 29 U.S.C. §794; and

E. Grant all other and additional relief to which Ms. McPhail may be entitled, at law or in equity.

Dated: August 22, 2014.

            Respectfully submitted,

             /s/ Wayne Krause Yang_____
            Wayne Krause Yang
            State Bar No. 24032644
            Joseph P. Berra
            State Bar No. 24027144
            James C. Harrington
            State Bar No. 09048500

            TEXAS CIVIL RIGHTS PROJECT
            1405 Montopolis Drive
            Austin, Texas 78741-3438
             (512) 474-5073 [phone]
             (512) 474-0726 [fax]

            ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

   I certify that, on August 22, 2014, a true copy of this document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the counsel of record for all parties, including for Defendant, City of Austin Assistant Attorney Chris Edwards.

            /s/ Wayne Krause Yang_____
            Wayne Krause Yang